

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

ENTERED
09/22/2011

| | | |
|---|---|---|
| IN RE: | § | |
| **JAMAL ABDALLA AYESH,** | § | **Case No. 10-36817** |
| Debtor(s). | § | |
| | § | **Chapter 7** |
| | § | |
| **FIRE SAFE PROTECTION SERVICES,** | § | |
| **LP,** | § | |
| Plaintiff(s) | § | |
| | § | |
| **VS.** | § | **Adversary No. 10-03505** |
| | § | |
| **JAMAL ABDALLA AYESH; aka MITCH;** | § | |
| **dba ROYAL SALON; dba SALON ROYAL;** | § | |
| **dba CLIPPER CUT; dba SALON JOVAN;** | § | |
| **dba ROYAL BEAUTY SALON; dba** | § | |
| **SHAHD BEAUTI SUPPLY & SALON; dba** | § | |
| **SALON JOVAN & BEAUTY SUPPLY,** | § | |
| Defendant(s). | § | **Judge Isgur** |

### MEMORANDUM OPINION

Fire Safe moves for summary judgment and asks the Court to (i) award Fire Safe legal fees and court costs associated with the bankruptcy proceedings, and (ii) declare such fees, along with sums due and owing in accordance with a Texas state court judgment, nondischargeable in bankruptcy.   For the reasons set forth below, the Court holds that:

- The sums owed under the state court judgment *are* excepted from discharge.

- The legal fees and costs associated with the bankruptcy proceedings *are not* excepted from discharge.

### Background

Fire Safe alleges that on March 25, 2008, Mr. Ayesh, using the false name Jovan Mitch, signed a contract with Fire Safe to obtain fire safety equipment and services for his business, the

Royal Beauty Salon. Fire Safe demanded payment of $2,354.44 on March 11, 2009, and Mr. Ayesh never paid.

Fire Safe sued Mr. Ayesh in the Harris County Civil Court at Law on May 18, 2009. The matter went to trial on April 5, 2010, and the court entered judgment on April 8, 2010. (State Court Judgment, Doc. No. 1-5). The court awarded $2,354.44 in actual damages, $11,143.94 in legal fees, prejudgment and postjudgment interest, court costs, and conditional awards of legal fees for state court appeals. The court did not award any exemplary damages, stating:

> The Court is not sure on the proof of the elements necessary for exemplary damages, i.e., an attempt to defraud at the time of making of the contract. Because the Court did not find that, the request for exemplary damages is denied. Evasion or putting up a defense is not a factor that gets exemplary damages. You have to prove an attempt to defraud at the time of the signing of the contract. The Court does not find that exists.

State Court Trial Tr., Doc. No. 9, at 57.

On August 10, 2010, Mr. Ayesh filed bankruptcy. Fire Safe filed this adversary proceeding on October 20, 2010, seeking to have the state court judgment excepted from discharge under § 523(a)(2)(A) of the Bankruptcy Code. Under § 523(a)(2)(A), debts for false pretenses, false representation, or actual fraud are excepted from discharge in bankruptcy. To have a claim excepted from discharge under § 523(a)(2)(A), the claimant must show an intent to deceive by the debtor. *Gen. Elec. Capital Corp. v. Acosta (In re Acosta)*, 406 F.3d 367, 372 (5th Cir. 2005).

Mr. Ayesh moved for summary judgment on January 13, 2011, asserting that the issue of intent to deceive had been fully litigated in state court. (ECF Doc. 11). Fire Safe filed a response on February 4, 2011. (ECF Doc. 2). Mr. Ayesh filed a reply on February 15, 2011. (ECF Doc. 14).

2 / 13

Mr. Ayesh argued the state court's finding that Fire Safe did not prove "an attempt to defraud at the time of the signing of the contract" precluded relitigation of Mr. Ayesh's intent. Fire Safe, Mr. Ayesh argued, was therefore collaterally estopped from litigating the dischargeability of the state court judgment. (ECF Doc. 11, at 4-5).  The Court denied Mr. Ayesh's Motion for Summary Judgment because, due to the heightened standard of proof in the state court proceedings, "[t]he issue of Ayesh's intent to deceive ha[d] not been fully and fairly litigated based on a preponderance of the evidence standard. Ayesh's intent [was] an issue of material fact." (ECF Doc. 15 at 6).

Mr. Ayesh's attorney later moved to withdraw, alleging irreconcilable differences with his client.  (ECF Doc. 26 at 2).  The Court granted this motion on May 9, 2011.  (ECF Doc. 27). On June 9, 2011, Fire Safe filed its Motion for Summary Judgment.  (ECF Doc. 32).  Mr. Ayesh, now representing himself, failed to timely file a response. The Court gave Mr. Ayesh three additional weeks to file a response because of Mr. Ayesh's status as a *pro se* defendant.  Mr. Ayesh filed a general denial answer instead.  (ECF Doc. 33).  The general denial answer provided no evidence to rebut any of Fire Safe's allegations.

## Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Fed. R. Bankr. P. 7056 incorporates Rule 56 in adversary proceedings.

A party seeking summary judgment must demonstrate:  (i) an absence of evidence to support the non-moving party's claims or (ii) an absence of a genuine dispute of material fact. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006).  A genuine dispute of material fact is one that could affect the

outcome of the action or allow a reasonable fact finder to find in favor of the non-moving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

A court views the facts and evidence in the light most favorable to the non-moving party at all times. *Campo v. Allstate Ins. Co.*, 562 F.3d 751, 754 (5th Cir. 2009). Nevertheless, the Court is not obligated to search the record for the non-moving party's evidence. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support the fact.[1] Fed. R. Civ. P. 56(c)(1). The Court need consider only the cited materials, but it may consider other materials in the record. Fed. R. Civ. P. 56(c)(3). The Court should not weigh the evidence. A credibility determination may not be part of the summary judgment analysis. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). However, a party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. Fed. R. Civ. P. 56(c)(2).

"The moving party bears the burden of establishing that there are no genuine issues of material fact." *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship*, 520 F.3d 409, 412 (5th Cir. 2008). The evidentiary support needed to meet the initial summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial.

If the movant bears the burden of proof on an issue, a successful motion must present evidence that would entitle the movant to judgment at trial. *Malacara*, 353 F.3d at 403. Upon

---

[1] If a party fails to support an assertion or to address another party's assertion as required by Rule 56(c), the Court may (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if, taking the undisputed facts into account, the movant is entitled to it; or (4) issue any other appropriate order. Fed. R. Civ. P. 56(e).

an adequate showing, the burden shifts to the non-moving party to establish a genuine dispute of material fact. *Sossamon*, 560 F.3d at 326. The non-moving party must cite to specific evidence demonstrating a genuine dispute. Fed. R. Civ. P. 56(c)(1); *Celotex Corp. v. Cattrett*, 477 U.S. 317, 324 (1986). The non-moving party must also "articulate the manner in which that evidence supports that party's claim." *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004). Even if the movant meets the initial burden, the motion should be granted only if the non-movant cannot show a genuine dispute of material fact.

If the non-movant bears the burden of proof of an issue, the movant must show the absence of sufficient evidence to support an essential element of the non-movant's claim. *Norwegian Bulk Transp. A/S*, 520 F.3d at 412. Upon an adequate showing of insufficient evidence, the non-movant must respond with sufficient evidence to support the challenged element of its case. *Celotex*, 477 U.S. at 324. The motion should be granted only if the non-movant cannot produce evidence to support an essential element of its claim. *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

## <u>Analysis</u>

<u>False Representation</u>

In order "[f]or a debt to be nondischargeable under section 523(a)(2)(A), the creditor must show (1) that the debtor made a representation; (2) that the debtor knew the representation was false; (3) that the representation was made with the intent to deceive the creditor; (4) that the creditor actually and justifiably relied on the representation; and (5) that the creditor sustained a loss as a proximate result." *In re Mercer*, 246 F.3d 391, 403 (5th Cir. 2001). The burden of proof is by a preponderance of the evidence. *Id.*

When an issue was previously litigated under state law, "a bankruptcy court will apply the law of collateral estoppel of the relevant state." *Collier on Bankruptcy* ¶ 523.06 (16th ed.) (citing *Gayden v. Nourbakhsh (In re Nourbakhsh)*, 67 F.3d 798, 800 (9th Cir. 1995); *St. Laurent v. Ambrose (In re St. Laurent)*, 991 F.2d 672, 676 (11th Cir. 1993)). In Texas, collateral estoppel "applies when an issue decided in the first action is actually litigated, essential to the prior judgment, and identical to an issue in a pending action." *Texas Dep't of Public Safety v. Petta*, 44 S.W.3d 575 (Tex. 2001).

The state court found Mr. Ayesh signed the contract with Fire Safe using the false name Jovan Mitch. (ECF Doc. 9 at 54-55). This issue was actually litigated, it was essential to the prior judgment, and it is identical to an issue in the pending action. Collateral estoppel therefore applies.[2] Signing a contract using a false name is a misrepresentation the signee knows is false when made, thereby establishing the first two elements for nondischargeability under § 523(a)(2)(A).

There is no genuine issue of material fact that Mr. Ayesh made the false representation with the intent to deceive Fire Safe. Mr. Ayesh signed the contract using a false name. Mr. Ayesh offered the Court no explanation why he did so. Indeed, Mr. Ayesh continues to deny he signed the contract. (ECF Doc. 32-10). These facts are sufficient under a preponderance standard to shift the burden to Mr. Ayesh to establish a genuine issue of material fact that, even though he signed using a false name, he lacked the intent to deceive Fire Safe at the time he entered into the contract. Mr. Ayesh produced no evidence in this regard and failed to establish a genuine issue of material fact.

---

[2] On this issue, the burdens of proof are identical on the state and federal issues. Collateral estoppel did not apply on the issue of intent to deceive because the standards of proof differed. Under applicable Texas law, the burden of proof is clear and convincing evidence, but for exceptions from discharge the burden is preponderance of the evidence. (ECF Doc. 15 at 5-6).

There is likewise no genuine issue of material fact that Fire Safe justifiably relied on the representation[3] and suffered a loss as a proximate result.[4]

Actual Fraud

As the Court finds Mr. Ayesh's false representation results in an exception from discharge of his debt to Fire Safe, the issue of actual fraud need not be addressed.

Overview of the Extent of the Debt Excepted from Discharge

As to damages, Fire Safe asks the Court to except from discharge the state court awards of $2,354.44 for fraudulently obtained services, $11,143.94 in legal fees, and interest and costs.[5] Additionally, Fire Safe asks the Court to award and except from discharge at least $5,000 for legal fees incurred in the bankruptcy proceedings (along with conditional fee grants for appeals) and all court costs. The Court declares that the debts of $2,354.44 for the fraudulently obtained services, $11,143.94 for legal fees, and the awards of interest and court costs from the state court judgment are excepted from discharge. The Court will not award legal fees or court costs related to the bankruptcy proceedings.

---

[3] Patrick Walker stated: "He [Ayesh as] (Jovan Mitch) represented to me that he is the owner of Royal Beauty Salon, that he had the authority to execute the Agreement, and hat [sic] he would perform his obligations (to pay Fire Safe) according to the Agreement. Fire Safe relied on Ayesh's representations in agreeing to the Agreement and in providing the services that are reflected in the Agreement." (ECF Doc. 32-5). All evidence before the Court indicates Fire Safe justifiably relied on Mr. Ayesh's representations.

[4] A Fire Safe affidavit puts the cost of the fraudulently obtained services at $2,354.44. (ECF Doc. 32-1). Also, this issue was fully litigated in the state court proceedings and so both sides are collaterally estopped from arguing the amount differs from $2,354.44. (ECF Doc. 9 at 55).

[5] In addition to the amounts of $2,354.44 and $11,143.94, the state court awarded prejudgment interest on the $2,354.44 "at the rate of five percent per annum from May 18, 2009 through the date immediately proceeding the date hereof." (ECF Doc. 32-9 at 1). The date immediately preceding the entry of final judgment in state court was April 7, 2010. (*Id.*). The prejudgment interest equals $104.50. The state court also awarded "[p]ostjudgment interest at the rate of five percent (5%) per annum, compounded annually, on the total amount of this judgment; and . . . All costs of court." The total judgment, which included the prejudgment interest, equals $13,602.88. Postjudgment interest on this amount equals $1,004.94 as of September 21, 2001. The total amount excepted from discharge is $14,607.81. Fire Safe submitted no evidence as to the amount of court costs. Because of an absence of proof, no court costs are awarded.

<u>Services Fraudulently Obtained</u>

The Bankruptcy Code explicitly exempts from discharge Mr. Ayesh's debt for the services fraudulently obtained from Fire Safe.  11 U.S.C. § 523(a)(2)(A).

<u>State Court Award of Legal Fees, Interest, and Court Costs</u>

The state court awarded legal fees, prejudgment and postjudgment interest, and court costs.  (ECF Doc. 32-9).  Legal fees and other damages arising from a state court fraud judgment are excepted from discharge when the damages judgment itself is excepted from discharge.  *See Cohen v. De la Cruz*, 523 U.S. 213 (1998) ("[T]he text of § 523(a)(2)(A) . . . encompasses any liability *arising from* money, property, etc., that is fraudulently obtained, including treble damages, attorney's fees, and other relief that may exceed the value obtained by the debtor.") (emphasis added); *Snook v. Popiel (In re Snook)*, 168 Fed. Appx. 577, 579 (5th Cir. 2006).

This case is not as straightforward as *Cohen* or *Snook.*  In *Cohen* and *Snook*, the underlying judgments were based on fraud.  The underlying judgment in this case appears to be based on a breach of contract claim.[6]

The Court does find, based on the summary judgment record, that Mr. Ayesh committed fraud under § 523(a)(2)(A).  The issue is whether the state court award for legal fees, interest, and other costs (awarded in a breach of contract context) "arise from" Mr. Ayesh's fraud.  While a close call, the Court believes these liabilities do "arise from" the fraud Mr. Ayesh perpetrated.  They are therefore also excepted from discharge.

---

[6] Fire Safe describes the state court action as one for a "breached agreement."  (ECF Doc. 1 at 4) ("On May 18, 2009, Plaintiff FIRE SAFE filed suit against 'Jovan Mitch' for the breached Agreement in *Cause No. 940,363, Fire Safe Protection Services, L.P. v. Jovan Mitch*; in the Harris County Civil Court at Law No. 1 (the 'State Lawsuit'), as 'Jovan Mitch' appeared to the be [sic] person who executed the Agreement.")  The transcript indicates this to be correct.  (ECF Doc. 9).  The copy of the actual judgment submitted does not state the cause of action.  (ECF Doc. 32-9).

The Ninth Circuit dealt with this issue in *In re Sabban*. 600 F.3d 1219 (9th Cir. 2010). Sabban, majority interest holder of a general partnership, falsely represented to a homeowner he was licensed by California's Contractors State License Board. *Id.* at 1220. The homeowner relied on this false representation, entered into home remodeling contracts with Sabban, and sued Sabban when problems arose. *Id.* After dismissal or withdrawal of all other claims, the homeowner proceeded under §§ 7160 and 7031(b) of the California Business & Professions Code.[7] *Id.* The state court awarded the homeowner a $500 penalty and reasonable attorneys' fees under the § 7160 fraudulent inducement claim, but found no amount could be awarded to the homeowner in damages under § 7160.[8] *Id.* Under § 7031(b), which is "in the nature of disgorgement of compensation [paid to unlicensed contractors]," the state court awarded the homeowner $123,000, representing the amount the homeowner paid to Sabban. *Id.* at 1221. The issue was whether the $123,000, to which the homeowner would have been entitled even if Sabban committed no fraud and to which the homeowner was entitled in spite of the fact the state court found no damages resulted from the fraudulent inducement, was nevertheless excepted from discharge under § 523(a)(2)(A) as "arising from" Sabban's fraud. The Ninth Circuit held the $123,000 award did not "arise from" Sabban's fraud and was thus discharged.

In reaching this conclusion, the Ninth Circuit rejected the homeowner's broad interpretation of *Cohen*. The homeowner read *Cohen*'s "arising from" language to indicate

---

[7] Section 7160 "provides a cause of action to individuals induced to contract for home improvements in reliance on fraudulent statements." *Id.* at 1220-21. Section 7031(b) "provides that a party who has used the services of an unlicensed contractor may recover all compensation paid to that contractor." *Id.* at 1221. It is important to note that "[l]iability under § 7031(b) requires only that compensation have been paid to an unlicensed contractor. Fraud and actual harm are irrelevant." *Id.*

[8] The state court found Sabban's false representation induced the homeowner to enter into the contract, the homeowner paid $123,000 to Sabban as general contractor, and then Sabban in turn paid $129,217.95 to licensed subcontractors who performed the remodeling work. *Id.* at 1220. The state court concluded that "[t]echnically there are no damages" under § 7160. *Id.* at 1221.

nondischargeability under § 523(a)(2)(A) only requires "cause in fact" or "but for" causation. To use the facts from *Sabban* as an illustration, the homeowner's theory was because the state court award of $123,000 would not exist but for Sabban's false representation that he was a licensed contractor,[9] the award was nondischargeable under § 523(a)(2)(A). The homeowner argued that "under *Cohen* 'it makes no difference that a debtor's proven fraud exposes him to further liability for violation of laws that do not mention fraud.'" *Id.* at 1224. The Ninth Circuit disagreed, interpreting *Cohen* to require more than mere "but for" causation for a liability to "arise from" a debtor's fraud.[10] *Id.* The Court agrees with the Ninth Circuit's analysis of *Cohen* and the result in *Sabban*, but finds the current case distinguishable.

    *Miller v. Lewis* from the Eastern District of Texas is a good case to contrast with *Sabban*. 391 B.R. 380 (E.D. Tex. 2008), *aff'd*, 307 Fed. Appx. 785 (5th Cir. 2008). Miller committed fraud across the country. *Id.* at 382. In one scheme Miller, "[holding] himself out as an investment professional, allowed Lewis to invest varying amounts . . . with limits purportedly set by large banks such as J.P. Morgan." *Id.* Miller did not invest Lewis's money and simply used it as his own. *Id.* Lewis sued Miller in Arizona state court and, after removal to federal court, the District Court for the District of Arizona entered a stipulated judgment which stated in part: "[Miller and his wife] are liable to plaintiffs for breach of contract, conversion, constructive trust, fraud and breach of fiduciary duty in the amount of $9,000,000."[11] *Id.* The Millers

---

[9] This award would not exist because there would have been no contract, and therefore the homeowner would not have had a cause of action under § 7031(b) because the homeowner would not have given money to an unlicensed contractor.

[10] In reaching its conclusion that *Cohen* does not extend so far, the Ninth Circuit distinguished the New Jersey statute at issue in *Cohen* from § 7301(b) in that the New Jersey statute "is not premised on either fraud or actual harm" and in fact that "[f]raud and actual harm are irrelevant." *Id.* at 1224, 122.

[11] There was a related settlement agreement under which Miller would pay $3,000,000 up front and $1,500,000 in annual $250,000 installments. *Id.*

subsequently filed bankruptcy and the United States Bankruptcy Court for the Eastern District of Texas held all $9,000,000 excepted from discharge under § 523(a)(2)(A).[12] Miller appealed.

The district court affirmed. *Id.* The district court stated that "[u]nder the *Cohen* analysis, the entirety of the Arizona judgment is an *obvious outgrowth* of Miller's fraudulent scheme."[13] *Id.* (emphasis added). Fraud was not a necessary predicate to the state court actions in *Miller*.[14] This is not to say, however, that fraud was "irrelevant to" the state court judgment in *Miller* as it was in *Sabban*. The district court found the claims for breach of contract, conversion, and breach of fiduciary duty to be "obvious outgrowths" of a fraudulent scheme like Miller's.[15] Miller falsely represented himself as an investment professional to induce Lewis to enter into the contract—a contract Miller intended to breach, a contract creating a fiduciary duty Miller knew he would breach, and a contract which would provide Miller funds to convert. While not awarded under statutes premised on fraud, fraud was not "irrelevant" because the state court claims were an "obvious outgrowth" of Miller's scheme.[16] This link satisfied *Cohen*'s "arising under" test and the entire $9,000,000 was nondischargeable in bankruptcy.

The present case is more akin to *Miller* than *Sabban*. In the present case, (1) Mr. Ayesh

---

[12] The District Court for the District of Arizona also included as part of its stipulated judgment that "this judgement [sic], in its entirety, is not dischargeable under any provision of the United States Bankruptcy Code." *Id.*

[13] The district court also found the debt nondischargeable under § 523(a)(2)(A) using alternative reasoning not relevant to this case.

[14] Unlike *Cohen*, there is no evidence the state court judgment in *Miller* was awarded under statutes premised on fraud.

[15] The District Court noted that "[a]t no point did Miller even entertain the idea of treating the funds as anything other than his personal petty cash." *Id.*

[16] In one sense, of course, the § 7301(b) judgment is an "obvious outgrowth" of Sabban's false representation: it induced the homeowner to enter into the contract and a § 7301(b) claim resulted from the simple existence of the contract with an unlicensed contractor. However, a § 7301(b) claim results from *any* contract with an unlicensed contractor. To put it another way, claims for breach of contract and conversion are "obvious outgrowths" of contracts related to schemes such as Miller's, but not "obvious outgrowths" of all contracts between an investment professional and an investor client. In contrast, § 7301(b) claims are "obvious outgrowths" of all contracts between an unlicensed contractor and a homeowner regardless of fraud.

signed the contract using the false name; (2) this, along with Mr. Ayesh's assertion he was the owner of Royal Beauty Salon, induced Fire Safe to enter into the contract; (3) Mr. Ayesh refused to pay for the services obtained; (4) Mr. Ayesh continues to deny signing the contract even after state court findings to the contrary; and (5) Mr. Ayesh provided the Court with no explanation for the false representation.  A state law claim for breach of contract is an "obvious outgrowth" of such a false representation.   Under *Miller* and *Cohen*, all damages from the state court breach of contract claim also "arise from" Mr. Ayesh's fraud and are excepted from discharge.

Legal Fees and Costs for Bankruptcy Proceedings

Fire Safe also asks the Court to both award legal fees and costs for the bankruptcy proceedings and to declare such fees excepted from discharge.  The Bankruptcy Code, like other federal statutes, is governed by the "American Rule."  *In re Nair*, 320 B.R. 119, 125 (Bankr. S.D. Tex. 2004) (citing *Alyeska Pipeline Svc. Co. v. The Wilderness Soc.*, 421 U.S. 240, 261 (1975)). The Supreme Court's holding in *Cohen* does not indicate § 523(a)(2)(A) provides a possible exception to the normal rule.   Creditors "are [only] entitled to recover attorneys' fees in bankruptcy claims if they have a contractual right to them under state law . . . ." *Jordan v. Southeast Nat'l Bank (In re Jordan)*, 927 F.2d 221, 227 (5th Cir. 1991) (quoting *In re Martin*, 761 F.2d 1163 (6th Cir. 1985)).  The contract submitted to the Court does not indicate Fire Safe is entitled to legal fees or court costs.  (ECF Doc. 13-1, 32-2).  Fire Safe did not demonstrate to the Court they are entitled to such fees as a matter of contract under applicable Texas law.  Rule 56 "does not obligate this court to search for evidence to support a party's motion for summary judgment."  *Udoewa v. Plus4 Credit Union*, 754 F. Supp. 2d 850, 861 n.17 (S.D. Tex. 2009) (citing *de la O v. Hous. Auth.*, 417 F.3d 495, 501 (5th Cir. 2005)).  Therefore, the Court may not award Fire Safe legal fees and court costs related to the bankruptcy proceedings, much less

declare such debts excepted from discharge.

## Conclusion

The Court will issue an Order in accordance with this Memorandum Opinion.

SIGNED **September 21, 2011.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE